# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

December 2, 2010

*Before*

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 10–2407

| | |
|---|---|
| STEVEN J. THOROGOOD, individually and on behalf of all others similarly situated, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellee,* | |
| *v.* | No. 06 C 1999 |
| SEARS, ROEBUCK AND COMPANY, | Harry D. Leinenweber, *Judge.* |
| *Defendant-Appellant.* | |

**O R D E R**

The plaintiff-appellee filed a petition for panel rehearing, and rehearing en banc, on November 16, 2010. All the judges on the panel have voted to deny the petition, and no judge has requested a vote on rehearing the case en banc. But in view of the accusations leveled in the petition by the plaintiff's lawyer, Clinton A. Krislov, against the panel's decision, we have decided that a further statement, beyond merely reporting the denial of the petition, would be helpful to readers of the panel opinion (2010 WL 4286367, Nov. 2, 2010; our earlier opinions in this protracted litigation are reported at 547 F.3d 742 and 595 F.3d 759), readers of the petition for rehearing—and perhaps even Mr. Krislov, whose accusations are over the top, as we shall now explain, and who may wish to moderate his fury.

The petition expresses in tones of outrage (1) disagreement with the merits of our decision, including the scope of the injunction that we ordered the district court to enter; and (2) outrage at the panel's characterization of Krislov's and Boling's litigation tactics. Mark Boling is Krislov's cocounsel in the California copycat class action suit that we ordered enjoined on the

authority of the All Writs Act. Krislov is the colorful attorney (and Illinois politician[1]) who in the oral argument of the first appeal in this lawsuit about alleged rust stains in clothes dryers sold by Sears Roebuck asked us to quiz our wives as to whether they worry that a "stainless steel" clothes dryer might cause rust stains on the clothes being dried unless the dryer's drum was made *entirely* of stainless steel. The wives unanimously answered "no." Given Krislov's challenge (ask your wives), that should have ended this litigation. (And speaking of gender, we note Krislov's remark at the oral argument: "Not to be sexist, your honor, but maybe we should have this en banc so some of the female judges on this court could sit and might weigh in." This may be an unacknowledged ground on which he is seeking not only panel rehearing but rehearing en banc.)

The petition notes a tension between our injunction (against the California class action), and our similar injunction in *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 333 F.3d 763 (7th Cir. 2003), on the one hand, and the Supreme Court's decisions in *Taylor v. Sturgell*, 553 U.S. 880 (2008), and *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), on the other hand. But its failure to acknowledge the grant of certiorari in *Smith v. Bayer*, 131 S. Ct. 61 (2010) (discussed in our opinion), is telling: the holdings in the cases that Krislov cites do not rise to the level of a "clear directive" from the Supreme Court. Instead a circuit split has developed concerning whether and when class certification orders can serve as the basis for collateral estoppel in other forums. Our opinion notes this tension and the possibility that the merits decision in *Smith v. Bayer*, when it is issued, may warrant modification of the injunction that we have ordered.

The petition ignores the principal reasons our opinion gave for enjoining the copycat class action. It says virtually nothing about the All Writs Act, though that was the very ground of our decision, and makes a number of disingenuous statements such as that "rather than seeking interlocutory review in the Ninth Circuit, Sears filed an All Writs Act, 28 U.S.C. § 1651 ('All Writs Act') petition in the closed *Thorogood* case in the Northern District of Illinois seeking to enjoin the previous unnoticed class members from bringing class claims elsewhere." Sears *could not* appeal the California court's order because it was not an appealable order.

The petition ignores our point that class certification is improper given the nature of the rust-stains claim, which does not present "common issues of law or fact" that can support a class action. It ignores our point that Murray's suit is indeed a copycat. It ignores our criticisms of the two district court opinions. It says that "the Panel…ordered the district judge to enjoin class members from pursuing causes as a class action against Sears, anywhere," yet ignores that the opinion is explicit that *individual* claims are not to be enjoined. Even class actions "against Sears, anywhere" are permitted, provided they are not based on theories rejected in our

---

[1] As he explains in the petition, ""While it may be that some number of attorneys who bring class actions seek merely to fatten their pockets at the expense of their clients, counsel herein cannot be counted among them. Since 1983—over the course of almost *forty years* [actually just 27 years]—Plaintiff's counsel has taken on tough battles against difficult defendants on difficult issues in class, derivative, and public interest cases…. Moreover, I have run for public office, always, on platforms that challenged the status quo in our state, and when I have succeeded financially, I have used that for the public good as well…. In 2009, I founded and funded the Center for Open Government law clinic at IIT Chicago-Kent College of Law, which uniquely assists individuals in gaining access to their government, generally under the Freedom of Information and Open Meetings Acts, where currently six cases are proceeding" (emphasis in original).

decision. And it ignores that the pressures on Sears to settle in the face of Krislov's onslaught of litigation amounts to irreparable harm; we explained that "there is no way in which Sears can recoup the expense of responding to Murray's extravagant discovery requests and of filing preclusion defenses against duplicative class actions in other states. The harm it faces from the denial of the injunction is irreparable and its remedy at law against settlement extortion nonexistent."

The petition states, without substantiation, that "this case was brought by a highly educated metallurgic engineer, Steven Thorogood ('Thorogood'), who carefully evaluated his claims against Sears before taking action." Even if this is true, there is no suggestion that Murray, the named plaintiff in the copycat action, has any relevant background that might have helped him to "carefully evaluate his claims against Sears before taking action."

The focus of Krislov's concern is language in our opinion that he regards as ad hominem. He insists that "the tone and rampant mischaracterizations of the opinion must be modified even if the conclusion remains, because the opinion unjustifiably portrays the case as meritless, lawyer-driven litigation, an accusation thoroughly belied by the record and the distinguished careers of the lawyers involved…. [T]he merits of the claims, the suitability of certifying the case as a class action and the refusal to enjoin plaintiff's California-only state class action have been legitimized by two independent federal district courts. Thus, to disparage the merits or professional motivations of the parties or their counsel [i.e., Krislov and Boling] is unjustified and must be corrected because it runs afoul of the Code of Conduct for United States Judges." His specific concern is with the phrases "settlement extortion," "near-frivolous," "pugnacious," "pertinacious to a fault," and "a nuisance" that appear in the opinion. He ignores the evidence and analysis that supports these characterizations, and similar characterizations by other judges, and commentators, concerned with class actions that are believed to be abusive. He ignores the right and indeed the duty of judges to criticize lawyers who try the patience of other members of the bar, and the courts.

Krislov criticizes what he calls "the Panel's choice to personally attack Plaintiff's counsel [himself], in lieu of recognizing the sound discretion of *two* federal district courts" (emphasis in original). The opinion explains that the district judge in Illinois, whose decision we were reviewing, appeared to have overlooking several relevant considerations: "He seems to have believed that pleading res judicata or collateral estoppel *always* provides adequate relief against vexatious litigation. This case shows that it does not, as do the similar cases we cited earlier and the cases that say that enjoining vexatious litigation is preferable to the harassment of an expensive, time-consuming procedure to prove [a defendant's] res judicata or estoppel claims in another court." And the district judge in California—whose ruling, to repeat, cannot be appealed, even though, if it stands, it forces Sears to engage in costly discovery, as emphasized by Boling in urging a settlement favorable to the class—was confused about the record, as our opinion explains.

Krislov says that "Sears' resort to this Circuit for the preclusive shot is transparent forum shopping, looking for this Court's derisory view of the claim to influence it into binding all class members nationwide, because the Ninth Circuit's standards are decidedly more favorable to plaintiffs' claims." This is what is known as *chutzpah*, since Krislov brought his copycat suit in California because, as he says unguardedly, "the Ninth Circuit's standards are decidedly more

favorable to plaintiffs claims." Sears was not engaged in forum shopping. Only one forum offered the possibility of relief. Because it could not appeal the interlocutory order of the California judge, the only place to go to seek relief against being sued all over the country on frivolous grounds aimed at securing a settlement was the district court in Illinois.

Krislov says: "If the logic of *Rhone-Poulenc* [*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995)] remains accurate, then Sears had an adequate remedy to seek mandamus in the Ninth Circuit, over the Northern District of California's denial of Defendants' Motion to Strike." This misses the point: the All Writs Act permits courts to issue injunctive relief to protect and effectuate their *own* judgments, so that winning parties will *not* be forced to litigate a defense of collateral estoppel (or seek mandamus orders) in every subsequent forum in which they are harassed with the same legal claim until they cry "Uncle!"

He says: "Just as the court is entitled to be treated with the respect [*sic*] by litigants and their counsel, litigants and their counsel are entitled to be treated with respect by the court." Well, he doesn't treat us with much respect, stating in the petition for rehearing en banc that he filed after our first opinion: "the Panel's opinion reads more like a posting in its author's well-known blog (www.becker-posner-blog.com), declaring its view of class actions, mischaracterizing class counsel as being inherently corrupted by the inducement to sell out its clients' small claims for its own fees obtained through a collusive settlement…. [T]he panel opinion blatantly ignored the record evidence and substituted the authoring judge's personal economic theories and baseless factual declarations for the developed record." And in his current petition he says that "the Court's clearly prejudiced opinion presents an unsupported, op-ed style portrayal of class action attorneys that paints with a brush so broad that it demonizes all class action attorneys as *inherently* motivated to sell out their clients for small recoveries, to obtain large fees, and goes well over the top in its characterization of undersigned counsel's actions and motivation. Moreover, it appears to run afoul of Canon 3 of the Code of Conduct for United States Judges…. Indeed, the Panel's role as the self-assured Simon Cowell of the Circuits demeans not just us, but the Court as well" (emphasis in original).

(Who, you ask, is Simon Cowell? He was the cantankerous judge on "American Idol." See www.youtube.com/watch?v=a3cTEQFP3VQ (visited Dec. 1, 2010).)

Attorney Krislov says that the panel's "exceedingly facile approach disregards the highly desirable role of persuasive authority and its underlying reasoning in the American legal system…. In the real world, whichever way the first decision goes stands as some persuasive authority for subsequent ones. Cumulatively, the decisional tide of opinions would trend toward one competing theory until one or the other was ultimately accepted as either consensus, or simply correct, or correct in that jurisdiction." Translated, this means that Krislov's strategy is to bring identical or similar suits in different jurisdictions until he wins one, then use the judgment in that suit as res judicata or collateral estoppel in the next suit, and the next, and the next, until Sears gives up. As we noted in our opinion, Krislov wanted a judgment (rather than dismissal on grounds of mootness, Sears having offered a nuisance settlement well in excess of the maximum amount of money that Thorogood's individual claim was worth) so that he could use it to block Sears from defending the next suit, which turned out to be the California suit.

"Zesting to smear the plaintiff's counsel," says Krislov, "the Panel's characterization of the letter [the reference is to cocounsel Boling's letter to Sears, which we reprinted as an appendix to our opinion] as 'settlement extortion' lacks support in the record, same as the Panel author's declaration that Mr. Boling's 'olive branch' letter sought to sell out the class…. The letter simply details that the case is going forward, discovery will likely produce more damaging evidence, which could generate greater damages, and plaintiffs are offering an 'olive branch,' exploring defendants' appetite for negotiating an agreed resolution. There is nothing implying a sellout. Instead, the letter proposes discussing a solution that would be in the best interest of both sides—precisely what counsel are often directed to do by courts all over the country." This is a joke. Both parties know the letter is a demand for favorable settlement terms. The letter itself contradicts Krislov's claim. It declares that "discovery will likely produce more damaging evidence, which could generate greater damages…. [I]f plaintiff is successful on a motion for class certification, the court as the gate keeper will demand a more significant recovery for resolution."

Krislov is concerned with harsh language in our opinion, but overstates the case when he decries "characterization of plaintiff class action lawyers as inherently corrupt and motivated primarily to sell out the class in order to gain large fees." What we said was that the structure of class actions under Rule 23 of the federal rules gives class action lawyers an *incentive* to negotiate settlements that enrich themselves but give scant reward to class members, while at the same time the burden of responding to class plaintiffs' discovery demands gives defendants an *incentive* to agree to early settlement that may treat the class action lawyers better than the class. Class action attorneys have an "inherent motivation" to enrich themselves at the expense of the class (and with the connivance of defendants), but motivation is not a synonym for action; any actual corruption or selling out is gauged case by case. The Boling letter is some indication that the present case is such a case.

The criticisms in our opinion of the tactics employed by some class action lawyers are not criticisms made by judges alone, let alone by judges of the Seventh Circuit alone or members of this panel alone. Our opinion gave some examples: "The defendant wants to minimize outflow of expenditures and the class counsel wants to increase inflow of attorneys' fees. Both can achieve their goals if they collude to sacrifice the interests of the class." Christopher R. Leslie, "The Significance of Silence: Collective Action Problems and Class Action Settlements," 59 *Fla. L. Rev.* 71, 79–81 (2007) (footnote omitted); see also John C. Coffee, Jr., "Litigation Governance: Taking Accountability Seriously," 110 *Colum. L. Rev.* 288, 326–27 (2010). Two of the examples were opinions by Judge Henry Friendly, the very respected Second Circuit judge: *Saylor v. Lindsley*, 456 F.2d 896, 900–01 (2d Cir. 1972); *Alleghany Corp. v. Kirby*, 333 F.2d 327, 347 (2d Cir. 1964) (dissenting opinion). We gave additional examples in our first opinion in the clothes dryer litigation: *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165–68 (3d Cir. 2001); Jeffrey W. Stempel, "Class Actions and Limited Vision," 83 *Wash. U. L.Q.* 1127, 1213–14 (2005); Bruce L. Hay & David Rosenberg, "'Sweetheart' and 'Blackmail' Settlements in Class Actions," 75 *Notre Dame L. Rev.* 1377, 1389–92 (2000); Bruce L. Hay, "Asymmetric Rewards: Why Class Actions (May) Settle for Too Little," 48 *Hastings L.J.* 479, 485–89 (1997); Susan P. Koniak & George M. Cohen, "Under Cloak of Settlement," 82 *Va. L. Rev.* 1051, 1053–57 (1996) (describing the class action as "lawyer

self-dealing on a grand scale," *id*. at 1053); Jonathan R. Macey & Geoffrey P. Miller, "The Plaintiff's Attorney's Role in Class Action and Derivative Litigation," 58 *U. Chi. L. Rev.* 1, 22–26 (1991). And the criticisms can be found in other opinions of this court. See, e.g., *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 834 (7th Cir. 1999); *Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003); *In re Rhone-Poulenc Rorer, Inc.*, *supra*, 51 F.3d at 1298–99.

Want more? There is plenty more, including references in Supreme Court as well as court of appeals opinions to the danger of collusion between class action lawyers and defendants' lawyers. *Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 163–64 (2008); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852–53 (1999); *AmChem Products, Inc. v. Windsor,* 521 U.S. 591, 621–22 (1997); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740–41 (1975); *Sullivan v. DB Investments, Inc.*, 613 F.3d 134, 149–50 (3d Cir. 2010); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 802 (3d Cir. 1995); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991); *In re Agent Orange Product Liability Litigation*, 818 F.2d 216, 223–25 (2d Cir. 1987); *Piambino v. Bailey*, 757 F.2d 1112, 1139 and n. 68 (11th Cir. 1985); *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1306–07 (4th Cir. 1978); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978). There are also references to settlement extortion: *Jones Motor Co. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190, 1193 (7th Cir. 1999); *Byrne v. Nezhat*, 261 F.3d 1075, 1129–31 (11th Cir. 2001); *Duhaime v. John Hancock Mutual Life Ins. Co.*, 183 F.3d 1, 6–7 (1st Cir. 1999).

Neither the judges on this panel nor other federal judges so far as we are aware have denied that the class action is a worthwhile device, and indeed is indispensable for the litigation of many meritorious claims. But like many other good things it is subject to abuse. It has been abused in the stainless steel clothes dryer litigation.

The petition for rehearing is denied. No judge of this court in regular active service having requested a vote on the petition for rehearing en banc, rehearing en banc is also denied.