# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3847

IN THE MATTER OF:

AQUA DOTS PRODUCTS LIABILITY LITIGATION

APPEAL OF:

SARAH BERTANOWSKI, *et al*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 2364 (MDL No. 1940)—**David H. Coar**, *Judge*.

ARGUED APRIL 14, 2011—DECIDED AUGUST 17, 2011

Before EASTERBROOK, *Chief Judge*, and ROVNER and SYKES,
*Circuit Judges*.

EASTERBROOK, *Chief Judge*. Moose Enterprises made,
Spin Master distributed, and many retailers sold, Aqua
Dots, a toy consisting of small, brightly colored beads
that can be fused into designs when sprayed with water.
Moose Enterprises contracted production of Aqua Dots
to JSSY Ltd., a Chinese company, which substituted 1,4
butanediol for the specified adhesive, 1,5 pentanediol.

While the substitute adhesive is chemically similar to 1,5 pentanediol, it came with a drawback. When ingested, 1,4 butanediol metabolizes into gamma-hydroxybutyric acid (GHB), which can induce nausea, dizziness, drowsiness, agitation, depressed breathing, amnesia, unconsciousness, and death. Although the directions told users to spray the beads with water and stick them together, it was inevitable given the age of the intended audience and the beads' resemblance to candy (see the image below) that some would be eaten. Children who swallowed a large quantity of the beads became sick. At least two fell into comas.



After learning of the problem, Spin Master recalled all Aqua Dots products. The recall notice instructed consumers to take Aqua Dots products away from children and to contact Spin Master to exchange them

for (non-defective) replacement kits or a comparably priced toy. Alternatively consumers could return their toys to retailers. The recall notice did not mention refunds, but money-back requests were honored. Consumers returned roughly 600,000 of the more than one million defective Aqua Dots kits that had been sold. Another three million kits were pulled from the distribution channel before sale. Retailers gave customers refunds as agents for the manufacturer. Spin Master generally gave customers replacement kits or other toys, although, when asked, it provided refunds. The episode was the end of the line for Aqua Dots—but the same product is available today under the name PixOs.

The plaintiffs, purchasers of Aqua Dots products whose children were not harmed and who did not ask for a refund, challenge the adequacy of the recall program. They sued Spin Master, Moose Enterprises, Target, Toys "R" Us, and Wal-Mart (collectively "Spin Master"). They rely on the Consumer Products Safety Act, 15 U.S.C. §§ 2051–89, express and implied warranties, and state consumer-protection statutes. The plaintiffs asked for a full refund under federal law plus punitive damages under state law. The Panel on Multidistrict Litigation transferred twelve suits to the Northern District of Illinois for pretrial proceedings. After the district court denied plaintiffs' motion to certify a class, see 270 F.R.D. 377 (N.D. Ill. 2010), we authorized an interlocutory appeal under Fed. R. Civ. P. 23(f).

Before addressing the question of certification, we must consider Spin Master's argument that there is no case or

controversy because plaintiffs lack standing to sue. The requirements for standing, laid out in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), are injury, causation, and redressability. Spin Master contends that the plaintiffs do not have standing because none of the plaintiffs (or their children) was injured by swallowing the beads. This means that members of the class did not suffer physical injury, but it does not mean that they were uninjured. The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing. See, e.g., *Clinton v. New York*, 524 U.S. 417, 432 (1998); *Bryant v. Yellen*, 447 U.S. 352, 366–67 (1980); *Selevan v. New York Thruway Authority*, 584 F.3d 82, 89 (2d Cir. 2009) (standing requirements satisfied by an increase in highway tolls).

The district court's opinion denying class certification principally discussed Rule 23(b)(3), which says that certification is proper only if (among other things) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The district court framed the question as "whether a defendant administered refund program may be found superior to a class action within the meaning of Rule 23(b)(3)". 270 F.R.D. at 381. The court recognized that a recall is not a form of "adjudication" but decided that what it called a "policy approach" is superior to following the Rule's text. The court concluded that con-sumers would be better off returning their products for refund or replacement than pursuing litigation, which the court thought would just require the class

members to bear attorneys' fees in order to obtain a remedy that is theirs for the asking already. The district court observed that the recall was widely publicized. The record shows that more than 600,000 consumers returned Aqua Dots kits, and that more than 500,000 of these 600,000 received refunds. The plaintiffs could have had refunds—and still can have them today. The district court concluded that the substantial costs of the legal process make a suit inferior to a recall as a means to set things right.

It is hard to quarrel with the district court's objective. The lower the transactions costs of dealing with a defective product, the better. The transactions costs of a class action include not only lawyers' fees but also giving notice under Rule 23(c)(2)(B). Notice may well cost more, per kit, than the kits' retail price—and could be ineffectual at any price, since most purchases were anonymous. The court can't send each buyer a letter. Notice would be by publication, yet the recall was widely publicized. Why bear these costs a second time? The Consumer Products Safety Commission has not expressed dissatisfaction with the recall campaign or its results, and the record does not contain any evidence of injury to children after the recall was announced. Spin Master believes that most of the 400,000 kits not returned in the recall were used before the recall began and that few, if any, defective kits remain in consumers' hands. Consumers whose children used their kits are not members of the proposed class, so a public notice of a class action could be expensive yet pointless.

Still, a district court's conclusion that it has a better idea does not justify disregarding the text of Rule 23. Policy about class actions has been made by the Supreme Court through the mechanism of the Rules Enabling Act, 28 U.S.C. §§ 2071–77. A district court is no more entitled to depart from Rule 23 than it would be to depart from one of the Supreme Court's decisions after deeming the Court's doctrine counterproductive. Rule 23 establishes a national policy for the Judicial Branch; individual district judges are not free to prefer their own policies. The Court made this point twice in its most recent Term. See *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011); *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011). See also, e.g., *Schleicher v. Wendt*, 618 F.3d 679, 685–86 (7th Cir. 2010); *Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540 (3d Cir. 1973) (rejecting an argument that "policy" justifies departing from the normal meaning of the word "adjudication" in Rule 23(b)(3)).

It is not as if the Supreme Court and other participants in the rulemaking process (the Judicial Conference, the Standing Committee on Rules of Practice and Procedure, and the Advisory Committee on Civil Rules) used the word "adjudication" loosely to mean all ways to redress injuries. The third circuit observed in *Hess Oil* that the advisory committee's notes demonstrate that Rule 23(b)(3) was drafted with the legal understanding of "adjudication" in mind: the subsection poses the question whether a single suit would handle the dispute better than multiple suits. 478 F.2d at 543. A recall cam-

paign is not a form of "adjudication" under the committee note.

Although the district court's rationale is mistaken, it does not follow that the court's decision is wrong. Other parts of Rule 23 give a district judge ample authority to decide whether a class action is the best way to resolve a given dispute. Instead of departing from the text of Rule 23(b)(3), the district court should have relied on the text of Rule 23(a)(4), which says that a court may certify a class action only if "the representative parties will fairly and adequately protect the interests of the class." Plaintiffs want relief that duplicates a remedy that most buyers already have received, and that remains available to all members of the putative class. A representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests. See *Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289, 293–94 (7th Cir. 2010) (discussing a variety of ways that class actions may not protect the interests of the class). The judge cited the wrong subsection of Rule 23; so did Spin Master. But defendants did not forfeit their arguments; they made the essential contentions. No harm was done by the mis-citation. See *Elder v. Holloway*, 510 U.S. 510 (1994) (a court of appeals is entitled to apply the controlling law even if the litigants failed to cite the best authority).

Plaintiffs want punitive as well as compensatory damages. The punitive-damages claims depend on state

law. This creates problems under Rule 23(b)(3)(D), which requires judges to consider "the likely difficulty in managing a class action." Different states may have different ideas about whether a product's distributor should pay punitive damages for a problem caused by a foreign supplier's unauthorized substitution. We held in *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012 (7th Cir. 2002), that a nationwide consumer class was not manageable, and thus could not be certified, when it would depend on multiple states' laws. See also *Wal-Mart*, 131 S. Ct. at 2551–52.

There would be serious problems of management apart from the variability of state law. As we have mentioned already, individual notice would be impossible, which would make it hard for class members to opt out. No one knows who bought the kits. No one knows who used them without problems; this would make it difficult if not impossible to determine who would be entitled to a remedy. The per-buyer costs of identifying the class members and giving notice would exceed the price of the toys (or any reasonable multiple of that price), leaving nothing to be distributed. The principal effect of class certification, as the district court recognized, would be to induce the defendants to pay the class's lawyers enough to make them go away; effectual relief for consumers is unlikely.

Even if the subclasses proposed by the plaintiffs could address variance across state consumer protection laws, it would be very difficult to determine which consumers were in each subclass. The problems with the

plaintiffs' proposed subclasses are explored in detail in the district court's opinion; it is unnecessary to repeat that discussion. See 270 F.R.D. at 385–87.

ＡＦＦＩＲＭＥＤ