# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2518
_____

In re: Polaris Marketing, Sales Practices, and Products Liability Litigation

------------------------------

Bryan Forrest; Richard Berens; Michael Jacks; Robert Lenz; James Bruner; Michael Zeeck; Ed Beattie, individually and on behalf of all others similarly situated,

*Plaintiffs - Appellants*,

v.

Polaris Industries, Inc.; Polaris Sales Inc.,

*Defendants - Appellees*.
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 11, 2021
Filed: August 16, 2021
_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Fourteen purchasers of off-road vehicles brought a putative class action against Polaris Industries, Inc. and Polaris Sales Inc. (collectively, "Polaris"). The Polaris entities designed and manufactured the vehicles. The purchasers allege that a design defect caused the vehicles, all of which contain "ProStar" engines, to produce excessive heat. And they claim that the heat degrades vehicle parts, reduces service life, and creates a risk of catastrophic fires. Seven of the purchasers allege that their vehicles caught fire and were destroyed; the other seven have not experienced fires. The district court[1] granted Polaris's motion to dismiss the claims of the "no-fire" purchasers, because they failed to allege an injury in fact as required to establish an Article III case or controversy. The no-fire purchasers appeal, and we affirm.

I.

The allegations in the complaint concern Polaris off-road vehicles manufactured between 2011 and 2018 that contain ProStar engines. The plaintiffs allege that these vehicles "suffer from a common design defect (the 'Excessive Heat Defect')." The vehicles' high-powered engines and exhaust design allegedly cause hot air to build up inside the engine and passenger compartments. Coupled with "inadequate cooling and heat shielding," the heat allegedly causes "degradation and melting" of vehicle components "immediately," which in turn allegedly shortens the service lives of the vehicles, and renders them "vulnerable to catastrophic fires" during normal use.

As evidence of the alleged heat defect, the purchasers point to the availability of aftermarket products to dissipate or protect against heat, and to alternative exhaust

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

designs in competitor vehicles. They cite Polaris's recalls, at various times, of "all of the Class Vehicles." And they rely on results of their own testing. That testing compared three putative class vehicles against one competitor vehicle and one older Polaris model. According to the complaint, the class vehicles "consistently exhibited temperatures that were substantially higher" than the other two vehicles. The purchasers also cite academic literature on the thermal degradation of plastic. These writings explain that heat degradation is "inevitable" in "excessive heat conditions," and "often occurs microscopically." Two of the no-fire purchasers allege that they can "feel[] excessive heat come through" the passenger compartments, but none claims that microscopic thermal degradation was present in any of their vehicles.

The no-fire purchasers claim that they have suffered economic damages because they "would have not purchased the vehicles at all or would have paid significantly less" if they had known of the alleged defect. Although the purchasers allege that vehicle owners "are unable to operate their Class Vehicles without putting themselves at risk of injury and property damage," none of the purchasers alleges that he stopped using his vehicle because of the alleged defect.

The purchasers sought to certify classes of class vehicle owners. Under federal law, they alleged that Polaris violated the Magnuson-Moss Warranty Act. *See* 15 U.S.C. § 2310(d)(1). They raised various state law claims, including breach of warranty, fraudulent omission, and violations of consumer fraud laws, under the law of the States in which they purchased their vehicles. Polaris moved to dismiss the complaint as to the no-fire purchasers on the ground that because they did not allege any manifest defect in their vehicles, they failed to allege an injury in fact that would establish Article III standing to sue.

The district court concluded that the no-fire purchasers alleged no facts "as to how [the] defect manifests in their respective" vehicles, and therefore failed to "allege a *particularized* and *actual* injury." The court dismissed the claims of the no-fire

purchasers, and after the remaining plaintiffs voluntarily dismissed their claims without prejudice, *see* Fed. R. Civ. P. 41(a)(1)(A)(i), the no-fire purchasers appealed. We review *de novo* the grant of a motion to dismiss for lack of standing. *Wieland v. U.S. Dep't of Health & Hum. Servs.*, 793 F.3d 949, 953 (8th Cir. 2015).

## II.

The doctrine of Article III standing requires a plaintiff to establish that he has "suffered an 'injury in fact'—an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation omitted). We accept as true the factual allegations in the complaint, but give "no effect to conclusory allegations of law." *Stalley ex rel. United States v. Cath. Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007)).

The no-fire purchasers argue that they have suffered particularized and actual injury because they overpaid for vehicles with a manifest defect at the time of purchase. They argue that their allegations are comparable to those of the so-called "dry plaintiffs" who had standing in *In re Zurn Pex Plumbing Products Liability Litigation*. 644 F.3d 604, 616-17 & n.6 (8th Cir. 2011). The dry plaintiffs were homeowners who installed plumbing systems that allegedly were "doomed to leak within warranty" because of "stress corrosion cracking" that began at the time of installation. *Id.* at 609. Although the pipes had not yet leaked, this court concluded that the plaintiffs had standing because they alleged, with the support of expert testimony, that the cracking was "already manifest in all systems." *Id.* at 617. The court distinguished that claim from hypothetical assertions that the pipes "merely 'risk[ed]' developing" cracking. *Id.*

-4-

Polaris counters that the no-fire purchasers' claims are like allegations that this court has deemed insufficient because they assert only a risk that a product will develop a defect in the future. In *O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009), for example, a manufacturer recalled cribs with sides that could be lowered, making it easier to place children into the cribs. *Id.* at 502. A manufacturing defect, however, allegedly could cause the crib's "drop-side" to detach and create a dangerous gap in the crib. *Id.* Purchasers of the crib sued the manufacturer on the theory that they had "not received the benefit of the bargain: they paid for a drop-side crib," but could not use the crib "because the drop-side is not safe." *Id.* at 504. This court concluded that the plaintiffs suffered no injury in fact because *their* crib had not "exhibited the alleged defect," and they had "necessarily received the benefit of their bargain." *Id.* at 504-05.

*O'Neil* followed *Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999), where plaintiffs alleged that anti-lock brakes in their vehicles were defective because they performed in a counterintuitive way that could cause drivers to react inappropriately during emergencies. *Id.* at 626. The plaintiffs alleged economic injury on the theory that the brakes "diminished the vehicles' resale value," but they did not allege that the brakes "malfunctioned or failed." *Id.* at 628. This court concluded that the plaintiffs' "conclusory assertions" that they suffered injuries, and that the brakes were defective, were "insufficient as a matter of law to plead a claim" for economic injury. *Id.* at 629.

*O'Neil* and *Briehl* both held that plaintiffs failed to state a claim, without discussing standing and the requirement of injury in fact, but our later decision in *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), viewed the matter through the lens of Article III. *Wallace* recited that Article III "standing must be particularized," and that an injury is particularized only if it affects a plaintiff "in a *personal and individual* way." *Id.* at 1030 (quoting *Lujan*, 504 U.S. at 560 n.1). "In the context of defective products," *Wallace* explained, "'it "is not enough" for a

plaintiff "to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect."'" *Id.* (quoting *Zurn Pex*, 644 F.3d at 616 (quoting *O'Neil*, 574 F.3d at 503)).

Here, the no-fire purchasers contend that they "would not have purchased" or "would have paid significantly less" for their Polaris vehicles if they had known of the alleged heat defect. But unlike the homeowners in *Zurn Pex*, the purchasers do not allege that any manifest defect is present in their vehicles. They allege that excessive heat *can* cause microscopic degradation in plastic and metal, like the invisible stress cracking in the *Zurn Pex* fittings. But they do not allege that their vehicles exhibit any manifest-but-invisible degradation. Two of the purchasers allege that they can feel excessive heat when operating their vehicles, but they acknowledge that "engines and exhaust systems in all [off-road vehicles] typically generate high temperatures," and they do not allege how the production of heat by itself results in an injury.

The no-fire purchasers' allegations are closer to those in *O'Neil* and *Briehl*. Like the potentially defective cribs and brakes in those cases, the Polaris vehicles have not exhibited the alleged defect—the accelerated degradation of parts caused by allegedly excessive heat. No purchaser alleges that his vehicle has exhibited any damage or degradation, that replacement parts or additional servicing have been required, or that the vehicles failed to perform as intended. The purchasers have alleged nothing more than the existence of a defect in a product line or ownership of a product that is at risk for manifesting a defect. And in one respect their claims are weaker than those in *O'Neil*, where the plaintiffs went further and alleged that they stopped using the product because of the perceived risk. The district court correctly applied our precedent in determining that the no-fire purchasers failed to allege an injury sufficient to confer standing.

The judgment of the district court is affirmed.

_____