In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-3413

JAMES M. SWEENEY, *et al.*,

*Plaintiffs-Appellants*,

*v.*

KWAME RAOUL, in his official capacity as
Attorney General for the State of Illinois, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-1362 — **Sharon Johnson Coleman**, *Judge*.

_____

ARGUED SEPTEMBER 29, 2020 — DECIDED MARCH 8, 2021

_____

Before ROVNER, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. In its 2018 decision in *Janus v. AFSCME*, the Supreme Court held that public unions cannot require nonmembers to pay fees for the benefits of being represented by the union in collective bargaining and workplace disputes. To hold otherwise, the Court concluded, would run counter to the First Amendment's prohibition on compelled speech and association. Faced with this new economic reality,

an Illinois union that represents municipal public works employees brought suit alleging that *Janus* itself effected a constitutional violation in the other direction—forcing unions to represent nonmembers for free in violation of the union's own First Amendment right to avoid compelled association and speech. The district court rejected that position on the merits and entered summary judgment against the union. We vacate that judgment and remand with instructions to dismiss the union's complaint for lack of subject matter jurisdiction. The union brought a claim that federal courts will have to answer in time. But we cannot answer the question now, for the union has not alleged any concrete and particular facts showing that it faces the post-*Janus* freeriding predicament animating its lawsuit. Our resolving the substantial legal question in the abstract would offend the longstanding prohibition on federal courts issuing advisory opinions.

## I

### A

The Illinois Public Labor Relations Act governs labor relations between public employees and employers across the state. See 5 ILCS 315/1. A majority of employees in a bargaining unit may vote to select a union as their exclusive representative for collective bargaining and grievance proceeding purposes. With that exclusivity comes the responsibility of the union to fairly represent all bargaining unit employees, including those who are not union members. See 5 ILCS 315/6(d).

For many years, Illinois law allowed public unions to require nonmembers to pay so-called "fair share" or "agency" fees to compensate for the representative services the union

provides. This payment obligation sparked objections from nonmembers, and the issue made its way to the Supreme Court. In 1977 the Court concluded that a similar fair-share-fees law in Michigan did not violate nonmembers' First Amendment rights. See *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209. While acknowledging that mandatory fees forced those not wishing to affiliate with a union to subsidize its operations, the Court considered this an appropriate middle ground since the union, as exclusive representative, shouldered the obligation of representing nonmembers' interests before the employer with the same fervor and diligence as it owed dues-paying members. See *id.* at 221–22. This compromise came to reflect the norm in over 20 states. Until 2018 and *Janus*.

In *Janus* the Supreme Court overruled *Abood* and held that unions compelling the payment of fair share fees from nonmembers offended the First Amendment. *Janus v. AFSCME*, 138 S. Ct. 2448, 2460 (2018). This mandatory fee, the Supreme Court reasoned, violated the "free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Id. Janus*, in short, left public unions unable to collect fair share fees from nonmembers.

International Union of Operating Engineers Local 150 is one such union. It represents around 3,300 municipal employees in 133 bargaining units across primarily northern Illinois and northwest Indiana. James Sweeney serves as Local 150's president. The union employs nine staff members to represent public employees in employment disputes. Doing so costs about $5 million each year.

Local 150 says *Janus* has put the union between a rock and a hard place. As the exclusive representative of a bargaining

unit's employees, it remains obligated to represent nonmembers, yet it must now do so without any way of compelling fair share fees from these employees. Many nonmembers, Local 150 adds, have sent form letters reminding the union of its fair representation obligation. Local 150 thus sees *Janus* as enabling a kind of freeriding sure to strain the union's limited resources.

B

Local 150 invoked 42 U.S.C. § 1983 and brought suit in the district court in February 2018, alleging that the duty of fair representation in Illinois law without the corresponding ability to collect fair share fees infringes the union's First Amendment rights of free speech and association. The lawsuit named as defendants the Attorney General of Illinois and the Executive Director of the Illinois Labor Relations Board.

The defendants saw the lawsuit as premature—as Local 150 suing to resolve a legal question it believed was teed-up by *Janus*, rather than in response to a nonmember who refused to pay fair share fees but sought to force the union to represent him in one form or another. The district court disagreed, concluding that, after *Janus*, Local 150 faced imminent injury to its rights and obligations under Illinois law. An injury of this sort, the district court reasoned, sufficed to create a viable preenforcement challenge to the union's duty of fair representation.

About a year later, in November 2019, the district court entered summary judgment for the defendants and dismissed Local 150's claims with prejudice. *Janus*, the district court concluded, addressed compulsory fees from nonmembers rather than the principles of fair and exclusive representation. From

there the district court emphasized that the Supreme Court had made expressly plain that "states can keep their labor-relations system exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." *Janus*, 138 S. Ct. at 2485 n.27. Because *Janus* in no way altered the system of exclusive and fair representation outlined in Illinois law, the district court determined that it remained bound by other Supreme Court precedent rejecting a union's First Amendment challenge to a state law mandating exclusive representation. See *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271 (1984). Because *Janus*, by its own terms, purports to affect only the constitutionality of fair share fees and because *Knight* remains good law, the district court entered summary judgment for the defendants.

Local 150 now appeals.

## II

Local 150's lawsuit presents a question courts are certain to confront in *Janus*'s wake—whether a public union, no longer allowed to charge nonmembers fair share fees, must nonetheless represent those nonmembers in employment disputes. Indeed, Local 150 so anticipated the question that it brought its claims while *Janus* was pending, apparently predicting that a Supreme Court decision in favor of objecting nonmember employees would ripen the follow-up question.

But Local 150's asking the question does not mean a federal court owes the union an answer—at least not now. The reason comes from Article III's Case or Controversy requirement. Distilled to its essence, this requirement limits federal courts to resolving concrete disputes between adverse parties. See *Valley Forge Christian Coll. v. Americans United for*

*Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Put another way, Article III prevents federal courts from answering legal questions, however important, before those questions have ripened into actual controversies between someone who has experienced (or imminently faces) an injury and another whose action or inaction caused (or risks causing) that injury. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). These limitations, requirements, and prohibitions are embodied in the so-called justiciability doctrines—standing, mootness, ripeness, and the prohibitions on providing advisory opinions and answering political questions. See 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3529 (3d ed. 2020).

A

Local 150's claims fail on straightforward applications of standing and ripeness.

To establish "the irreducible constitutional minimum of standing," the plaintiff must have suffered an injury in fact traceable to the defendant and capable of being redressed through a favorable judicial ruling. *Lujan*, 504 U.S. at 560–61. The alleged injury must be "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical" to establish standing. *Id.* at 560. A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1. Concreteness requires the injury to exist and be "real," not "abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Because it would be both foolhardy and unfair to always force a plaintiff to break a law to challenge its legitimacy, the Supreme Court has outlined circumstances in which a party

may advance a preenforcement challenge before suffering an injury—so long as the threatened enforcement is "sufficiently imminent." See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2007). Meeting this standard requires allegations of both "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and "a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); see also *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15–16 (2010) (explaining that a history of enforcement, threat of future enforcement, and intention to commit similar conduct in future created an imminent-enough injury to bring preenforcement challenge).

We can restate many of these same precepts in terms of ripeness. Much like standing, ripeness gives effect to Article III's Case or Controversy requirement by "prevent[ing] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Plain and simple, ripeness is "peculiarly a question of timing." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974). In evaluating ripeness, we consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.

B

Local 150 did not present a Case or Controversy to the district court. For starters, Local 150 alleged no concrete or particularized injury. The union asked an important question—whether the duty of fair representation imposed by Illinois law violates Local 150's associational and free speech rights—without pointing to an actual or imminent injury to that

purported legal interest. It is not enough to say that after *Janus* several employees left the union or that nonmembers reacted to the decision by no longer paying fair share fees. The union needs to go a step further and identify a nonmember who has demanded representation in a grievance proceeding. That Local 150 sees such demands around the corner falls short of showing an imminent injury. To conclude otherwise would be tantamount to saying that *Janus* itself created a follow-on Case or Controversy for all public unions with nonmembers who decline to pay fair share fees.

Local 150's standing shortcoming does not end there. Even if we accepted the union's allegations as sufficient to demonstrate a cognizable injury, the alleged injury is not traceable to the defendants. Recall who Local 150 named as defendants — the Illinois Attorney General and the Executive Director of the Illinois Labor Relations Board. Illinois law empowers the Attorney General to prosecute violations of Board orders and to seek injunctive relief on behalf of parties complaining of violations of the Public Labor Relations Act. But Local 150 has not alleged that the Attorney General has threatened or brought any post-*Janus* enforcement proceedings against any union, let alone Local 150 itself, for any alleged violation of the duty to fairly represent nonmembers.

Local 150's real gripe is with *Janus* and what the union fears the Supreme Court's decision portends. For obvious reasons, Local 150 did not sue the Supreme Court. But the Board and the Attorney General are no more appropriate defendants at this juncture: neither party has taken any action risking or imposing any injury on Local 150.

Nor is this a circumstance in which Local 150 has brought a permissible preenforcement challenge to its post-*Janus* fair

representation obligation. The Supreme Court has recognized scenarios in which a plaintiff may bring suit prior to suffering an injury. Those circumstances require allegations of a threat of enforcement that is both credible and imminent, where the plaintiff makes clear its intention to continue its possibly unlawful conduct. See *Driehaus*, 573 U.S. 149. Local 150's claims, however, display none of these characteristics. The union does not suggest an "intention to engage in a course of conduct arguably affected with a constitutional interest" and proscribed by the statute. *Babbitt*, 442 U.S. at 298. Quite the opposite: Local 150 pledges to fulfill its duty of fair representation to nonmembers. Remember, too, the union does not allege that either the Attorney General or the Board has taken even a single step along the path to enforcement.

Nothing changes if we assess Local 150's complaint through the lens of ripeness. The union's complaint is premature. Indeed, *Janus* had not even been decided when Local 150 first filed this lawsuit. Local 150 pulled the litigation trigger anticipating *Janus*'s outcome and worried about its potential impact, but it did so without a nonmember demanding fair representation or any other action by the union.

### III

At the end of the day, we are left with a request for an advisory opinion. While we understand Local 150's desire for additional legal certainty after *Janus*, federal courts do not deal in advice. This principle has been well established since the early days of the Republic. See *Correspondence of the Justices*, reprinted in 3 *Correspondence and Public Papers of John Jay, 1782-1793*, at 486–89 (Henry P. Johnston ed., 1891) (declining to opine on a list of hypothetical questions posed by President Washington's administration about neutrality in a war

between England and France). Article III of the Constitution limits us to the resolution of Cases and Controversies.

The wrong reaction to today's decision is to think Local 150 has advanced a losing position. Not so. The question at the heart of Local 150's lawsuit is important to public unions and remains unsettled. It just needs to await resolution within the confines of a concrete and particularized dispute between a public union and nonmember demanding fair representation.

The benefits of awaiting a concrete and particularized dispute—a Case or Controversy—are plain. Doing so will give all involved an opportunity to fully probe the extent of a public union's obligation to fairly represent a nonmember who pays nothing for services rendered. Indeed, the union's proposed solution proves the point. After explaining the predicament the union sees as created by *Janus*, Local 150 emphasizes an alternative prescription mentioned by the Supreme Court itself—that unions be able to charge nonmembers the costs of representation in grievance proceedings. See *Janus*, 138 S. Ct. at 2468–69 ("Individual nonmembers could be required to pay for that service or could be denied union representation altogether."). That alternative cannot be explored—legally, practically, or otherwise—in the abstract. Facts will matter and allow the parties and courts alike to consider where the next line should be drawn in an area of law still being written.

We VACATE the district court's judgment and REMAND with instructions to dismiss for lack of subject matter jurisdiction.