In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1019

APEX DIGITAL, INC.,

*Plaintiff-Appellant,*

*v.*

SEARS, ROEBUCK & COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3972—**George W. Lindberg**, *Judge.*

ARGUED JUNE 2, 2009—DECIDED JULY 16, 2009

Before POSNER, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Apex Digital sued Sears to collect an unpaid debt. Sears filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), claiming that Apex lacked standing because it had assigned all of its rights in the debt to the CIT Group/Commercial Services, Inc. The district court agreed with Sears and granted its motion. We now affirm.

## I. BACKGROUND

On July 24, 2006, Apex Digital brought a diversity suit against Sears in the Northern District of Illinois for breach of contract and other related claims. The complaint alleged that over several years, Sears had purchased products from Apex worth in excess of $100 million. According to Apex, Sears accepted delivery but stopped paying for these products in 2005; the outstanding amount due after all potentially applicable credits is at least $8,185,302.24.

Sears responded on August 14 with a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6). Sears claimed that Apex sold and assigned all of its rights in its accounts receivable to CIT and therefore no longer had standing to sue. In support of its motion, Sears attached a letter from Apex dated June 20, 2003, which stated:

> We are pleased to inform you that we have entered into a factoring arrangement with The CIT Group/Commercial Services, Inc. (herein "CIT"). Under our agreement with CIT, all of our existing and future accounts receivable have been sold and assigned to CIT. We feel that this arrangement will provide a higher level of service for all our customers.
>
> In accordance with our arrangement with CIT, commencing immediately, payment on all outstanding invoices and all invoices hereafter rendered by us must be made directly to CIT, strictly

in accordance with the terms of sale . . . . In the event of any merchandise returns or claims, you thereof must give prompt notice to CIT.

Apex offered nothing in response to dispute Sears's factual allegations. Instead, it pointed to perceived defects in Sears's argument. Apex claimed that its letter to Sears was insufficient to determine the terms of the assignment between Apex and CIT and that, at most, it suggested that at some point in the last three years CIT and Apex had entered into an assignment of collection. Apex claimed that because an assignment of collection does not transfer beneficial ownership to the assignee under Illinois law, *see Ecker v. Big Wheels, Inc.*, 483 N.E.2d 639, 641-42 (Ill. App. Ct. 1985), the assignment Sears had alleged was not sufficient to divest Apex of its interest in the suit. Apex averred that because there was no facial defect in its complaint, Sears's motion was without merit.

Sears replied that the letter established a sale and assignment of all of Apex's rights in the debt, not merely the right to collect. The district court apparently agreed and granted Sears's motion on September 27, 2006, noting that the only relevant evidence presented was the letter from Apex's president stating, "[u]nder our agreement with CIT, all of our existing and future accounts receivable have been sold and assigned to CIT." The court concluded that, in the absence of further evidence

to the contrary, Apex lacked standing to sue.[1] This appeal followed.

## II. ANALYSIS

We review *de novo* a district court's dismissal for lack of subject matter jurisdiction. *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008). Apex claims that the district court applied the wrong standard to Sears's motion to dismiss. According to Apex, because the district court looked beyond the pleadings and considered extrinsic evidence, it improperly converted Sears's Rule 12(b)(1) motion into a Rule 56 summary judgment motion. In support of its argument, Apex cites cases establishing that to survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff need only show the existence of facts that could, consistent with the complaint's allegations, establish standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005). Because no facts in the pleadings defeated its standing, Apex claims that the district court erred in dismissing the suit. We disagree.

---

[1] Apex also filed a motion to vacate the dismissal under Rule 59(e) or, in the alternative, to permit the filing of an amended complaint under Rule 17(a). The district court denied both motions. The Rule 59(e) motion presented largely the same issues before us on appeal, and the Rule 17(a) motion is not before us, so we need not discuss either motion.

Standing is an essential component of Article III's case-or-controversy requirement. *Lujan*, 504 U.S. at 560. "'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues.'" *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). As a jurisdictional requirement, the plaintiff bears the burden of establishing standing. *Id.* Because standing is "not [a] mere pleading requirement[] but rather an indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Apex claims that at the pleading stage, the "manner and degree of evidence" it needed to establish standing was no evidence at all. Instead, Apex relies on *Lujan* and *Lac du Flambeau* for the proposition that general factual allegations of standing may suffice. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990))); *Lac du Flambeau*, 422 F.3d at 496. This, according to Apex, means that the district court is forbidden from considering any extrinsic evidence related to standing at the pleading stage.

But Apex ignores the critical difference between facial and factual challenges to jurisdiction. Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Both *Lujan* and *Lac du Flambeau* involved facial attacks because the allegations in the plaintiffs' complaints, even if true, were purportedly insufficient to establish injury-in-fact. *See Lujan*, 504 U.S. at 563-78 (analyzing why none of the allegations in the plaintiff's complaint satisfied the elements of standing); *Lac du Flambeau*, 422 F.3d at 496 ("The Secretary argues that LDF lacks standing because it has not adequately *pleaded* an injury in fact." (emphasis added)). In the context of facial challenges, Apex is correct that the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion. *Lawrence*, 919 F.2d at 1529.

In contrast, a factual challenge lies where "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). Sears has raised such a factual challenge here. It claims that although Apex's complaint was facially sufficient, external facts called the court's jurisdiction into question. The law is clear that when considering a motion that launches a factual attack against jurisdiction, "'[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction

exists.' " *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007)); *see also, e.g.*, *United Phosphorus*, 322 F.3d at 946; *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 n.2 (7th Cir. 2002); *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999).

This difference between facial and factual attacks on jurisdiction was aptly described by the Third Circuit:

> The facial attack does offer similar safeguards to the plaintiff [as Rule 12(b)(6) and Rule 56]: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under [Rule 12(b)(6) or Rule 56]. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In other words, the district court's ability to consider evidence beyond the pleadings derives from the importance of limiting federal jurisdiction. Because such "jurisdiction cannot be conferred by consent of the parties, if the facts place the district court on notice that the jurisdictional allegation probably is

false, the court is duty-bound to demand proof of its truth." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).

Sears produced evidence calling Apex's standing into question—a letter indicating that Apex had sold and assigned *all rights* in its accounts receivable to CIT. Once such evidence is proffered, "[t]he presumption of correctness that we accord to a complaint's allegations falls away," *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998), and the plaintiff bears the burden of coming forward with competent proof that standing exists, *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003); *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996). In this case, Apex failed to produce *any* evidence to rebut Sears's allegation that it had assigned all of its rights in the debt to CIT. It never provided evidence that the assignment had ended, nor that it was merely an assignment for purposes of collection. The district court correctly concluded that Apex had failed to meet its burden of proof.

Having determined that Apex did not meet its burden of proof to establish jurisdiction, the only remaining question before us is purely procedural. Apex notes that the district court never asked for additional briefing or conducted an evidentiary hearing before holding that it lacked jurisdiction. Thus, Apex claims that it never had the opportunity to present evidence that could have defeated Sears's claim.

We find Apex's claim to be without merit. Although the court did not hold an evidentiary hearing, Apex could

have attached its agreement with CIT to its response to Sears's motion. It chose not to do so.[2] Furthermore, this case does not present the same concerns as previous cases where we have held that an evidentiary hearing was required.

For example, in *Hemmings v. Barian*, 822 F.2d 688 (7th Cir. 1987), we reversed a district court that had dismissed a case for lack of jurisdiction without conducting an inquiry into the factual basis for the plaintiff's claim of diversity. In that case, the complaint alleged that the plaintiff was a citizen of Florida, that the defendant resided in Wisconsin, and that the parties were therefore citizens of different states. *Id.* at 693. As we noted, these allegations were insufficient to establish diversity jurisdiction because residency alone does not determine citizenship. *Id.* The district court dismissed the claim because diversity had not been properly alleged. *Id.* at 689. We remanded, holding that although the plaintiff's attempt to invoke diversity jurisdiction was "clumsy," dismissal was "overkill." *Id.* at 693. The proper course

---

[2] Apex did, however, attach the factoring agreement to its amended complaint, which the district court refused to accept. A review of that agreement reveals the likely reason that Apex withheld it in response to Sears's motion—the agreement stated: "You [Apex] sell and assign to us [CIT], and we purchase as absolute owner, all accounts arising from your sales of inventory or rendition of services which you in your discretion choose to factor with us . . . ." Thus, this agreement further undermines Apex's argument that Sears's evidence established no more than a collection agreement with CIT.

of action, we noted, was not to dismiss the complaint but to determine whether jurisdiction in fact existed. *Id.*

The instant case is distinguishable from *Hemmings*. First, the court in that case had no information before it on which to base its jurisdictional ruling. The defendant had not brought forward evidence to question the diversity of the parties, so the court had no factual basis for its decision. In contrast, Sears provided the court with concrete evidence that Apex lacked standing to sue, which formed a sufficient factual basis for the district court's decision.

Moreover, unlike in *Hemmings*, where the plaintiff made a "clumsy" attempt to invoke diversity jurisdiction, Apex made no attempt whatsoever to refute Sears's factual allegations. Sears claimed, based on the letter attached to its motion, that Apex had sold and assigned all of its interests to CIT. Apex argued that Sears's evidence established only an assignment of collection, but it never offered *any* factual information of its own to support that claim. It did not describe the contours of its relationship with CIT, nor did it attempt to define the assignment that had occurred. The district court therefore had no conflicting facts before it, and, using the evidence that Sears had presented, it determined that no jurisdiction in fact existed.

Although the district court is duty-bound to demand proof of jurisdiction when resolving factual disputes, *see Kanzelberger*, 782 F.2d at 777, it need not make such a demand when no true factual dispute exists. In this case, there was no such dispute before the court because

only one set of facts had been alleged. The district court certainly would have been within its discretion to conduct an evidentiary hearing, but we see no reason to require one under these circumstances.

### III. Conclusion

In its motion to dismiss, Sears produced evidence that called into question Apex's standing to sue. In response, Apex brought forward no competent evidence to establish the court's jurisdiction. Although the court did not conduct an evidentiary inquiry, none was required under the facts of this case. The dismissal of the suit is Affirmed.