In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-3247

SATANIC TEMPLE, INC.,

*Plaintiff-Appellant,*

*v.*

TODD ROKITA and RYAN MEARS,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22-cv-01859 — **Jane Magnus-Stinson**, *Judge.*

_____

ARGUED OCTOBER 24, 2024 — DECIDED JANUARY 6, 2026

_____

Before EASTERBROOK, KIRSCH, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* The Satanic Temple, Inc., is a Massachusetts non-profit corporation organized as a religious institution that seeks to ensure its members in Indiana can use telehealth medical services as a means to receive medication to induce abortion. But Indiana prohibits and criminalizes the administration of such medication with limited exceptions. *See* IND. CODE § 16-34-2-1 (prohibition), § 16-34-2-7(a) (criminalization). Because of this, the Satanic Temple sued

Indiana Attorney General Todd Rokita and Marion County Prosecutor Ryan Mears (collectively "Defendants") in their official capacities, seeking an injunction against the enforcement of § 16-34-2-7(a) on behalf of itself and its members.

Defendants moved to dismiss the Satanic Temple's first amended complaint asserting that the Satanic Temple lacked standing on behalf of its members and on its own. The district court agreed and granted Defendants' motion. For the reasons explained below, we affirm.

## I.    BACKGROUND

### A. Indiana's Telehealth Prohibition

On September 15, 2022, Indiana Senate Bill 1 (S.B. 1) went into effect in Indiana, amending Indiana Code §§ 16-34-2-1 and 16-34-2-7(a). Section 16-34-2-1 now requires an abortion in Indiana be performed by an Indiana-licensed physician in a hospital or an out-patient surgical center owned by a hospital. IND. CODE § 16-34-2-1(a)(1)(B). With respect to abortion-inducing drugs specifically, the law mandates a physician first examine a woman in person, dispense the drug to the woman in person, and have the woman consume the drug in the presence of the physician. IND. CODE § 16-34-2-1(a)(1)(B). The amended statute simultaneously prohibits telehealth and telemedicine as a means to provide any abortion. IND. CODE § 16-34-2-1(a), (d). Section 16-34-2-7(a), in turn, makes knowingly or intentionally violating § 16-34-2-1 a felony. IND. CODE § 16-34-2-7(a).

Other Indiana laws, outside of those amended by S.B. 1, also regulate abortions within the state. For example, Indiana law outlines comprehensive admission privileges a physician is required to satisfy before performing an abortion. *Id.* § 16-

34-2-1(a)–(c). And § 16-34-1-11 provides that "[t]elehealth may not be used to provide any abortion, including the writing or filling of a prescription for any purpose that is intended to result in an abortion." IND. CODE § 16-34-1-11.

Here, the Satanic Temple's seeks to enjoin only the enforcement of § 16-34-2-7(a), which it conceded at oral argument.[1]

### B. Relevant Factual Background

Members of the Satanic Temple adhere to Seven Tenets, two of which relate to abortion. Tenet III establishes the belief that one's body is inviolable and subject to one's own will alone.[2] Another, Tenet V, establishes that individual beliefs should conform to an individual's "best scientific understanding of the world" and that each person "should take care never to distort scientific facts to fit one's own belief."[3] The Satanic Temple says these Tenets support what it calls the "Satanic Abortion Ritual," a meditative ritual intended to "cast off notions of guilt, shame, and mental discomfort that a patient may be experiencing due to choosing to have a medically safe and legal abortion."[4]

The Satanic Temple maintains a telehealth abortion clinic to further the following of these Tenets among its members and facilitate their ability to perform the ritual. Though the Satanic Temple's principal place of business is in

---

[1] Oral argument at 40:10, 41:48, 45:22–46:12.

[2] Dkt. 21, Am. Compl, ¶ 7.

[3] Id.

[4] Id. ¶ 15; see also Dkt. 22-1, Ex. A, Satanic Abortion Ritual, at 1.

Massachusetts, the telehealth clinic serves only patients who are physically located in New Mexico.[5] To receive the Satanic Temple's telehealth abortion clinic services, an individual must be in New Mexico at the time of the online visit, have a New Mexico mailing address, and receive the abortion-inducing drugs in New Mexico. Once a patient has scheduled an appointment, an advanced practice registered nurse licensed in New Mexico conducts a consultation to determine whether to write a prescription for medicine to induce an abortion. If the nurse determines an abortion is needed, the nurse will write a prescription for the medication that is then filled by a third-party pharmacy and mailed to the patient.

The Satanic Temple does not operate a licensed abortion clinic in Indiana, and it does not intend to start an in-person abortion clinic in Indiana either.[6] Nor does it have ties to a hospital or surgical center within the state to perform abortions in adherence with the laws of Indiana.[7] But the Satanic Temple does seek to extend its telehealth services to Indiana.

## C. District Court Proceedings

The Satanic Temple sued Defendants in district court, arguing it could not operate its telehealth clinic to reach Indiana members following the enactment of S.B. 1. In its first amended complaint, the Satanic Temple sought an injunction preventing Defendants from enforcing § 16-34-2-7(a) against anyone who provides an abortion to an involuntarily pregnant woman, which it defines as a member of the Satanic

---

[5] Dkt. 50-1, Pl.'s Resp. Defs.' 1st Set of Admissions, at 1–2.

[6] Id.

[7] Id.

Temple residing in Indiana who became pregnant without her consent because of the legal inability to consent to sex or the failure of her birth control, or itself. The Satanic Temple also sought a declaration stating § 16-34-2-7(a) violated Indiana's Religious Freedom Restoration Act, IND. CODE §§ 34-13-9-1 *et seq.*, as applied to involuntarily pregnant women and itself. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that the Satanic Temple lacked standing to sue.[8] In their briefing, Defendants also requested jurisdictional discovery and attached outstanding discovery requests they had previously served on the Satanic Temple. The Satanic Temple opposed the motion but submitted responses to all of Defendants' requests, mooting the need for discovery.

The district court granted Defendants' motion, holding that the Satanic Temple lacked standing. In coming to this conclusion, the district court relied on various evidentiary submissions by the parties, including affidavits, declarations, exhibits, interrogatory responses, and admissions. As an initial matter, the district court found that the Satanic Temple did not have associational standing on behalf of its members because it failed to identify an injury specific to an identified member and rather sought to establish associational standing utilizing "speculation through statistics." The court concluded that without identifying an injured member, the Satanic Temple did not have associational standing. Furthermore, the district court reasoned the Satanic Temple itself lacked standing because it failed to identify an injury in fact and its requested relief could not be redressed by a favorable

---

[8] Defendants also contended the complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

ruling as other Indiana laws, outside of § 16-34-2-7(a), prevented it from hosting telehealth appointments and prescribing abortion-inducing medication to its members in Indiana.

The Satanic Temple now appeals, contending that the district court's standing conclusions were wrong.

## II.    ANALYSIS

We review a district court's dismissal for lack of standing de novo. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). The Satanic Temple, the party seeking to invoke federal jurisdiction, has the burden of establishing that it meets the requirements of standing. *Disability Rts. Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 800 (7th Cir. 2008).

### A. Jurisdiction and Standing

Federal courts are courts of limited subject matter jurisdiction, meaning we have authority to hear cases only where authorized by statute and permitted by the Constitution. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Thompson v. Army & Air Force Exch. Serv.*, 125 F.4th 831, 833 (7th Cir. 2025). Article III, Section 2 of the Constitution provides one such restriction, constraining our power to only deciding "Cases" and "Controversies." U.S. CONST. art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)).

To effectuate that limitation on our jurisdiction, we must be sure the plaintiff has a sufficient "personal stake" in the

case—in other words, standing to sue. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 505 (7th Cir. 2024). A plaintiff's standing to sue "is one essential piece of a [federal] court's subject matter jurisdiction." *Word Seed Church v. Vill. of Hazel Crest*, 111 F.4th 814, 822 (7th Cir. 2024).

To establish standing, the plaintiff must have (1) suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be addressed by a favorable judicial decision. *TransUnion*, 594 U.S. at 423. Without satisfaction of each element, we lack power to hear the case, and it must be dismissed. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) ("When a plaintiff lacks standing, a federal court lacks jurisdiction."). This ensures we stay in our constitutionally assigned lane where we are empowered to "resolve only 'a real controversy with real impact on real persons.'" *TransUnion*, 594 U.S. at 424 (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 87 (2019)).

### B. Individual and Associational Standing

An organization can assert standing "either on behalf of itself or on behalf of its members." *Milwaukee Police Ass'n v. Bd. of Fire & Police Com'rs of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013). First, an organization may sue in its own right. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). In doing so, the organization asserts its own claim and must satisfy the elements of standing like any other plaintiff seeking refuge in federal court. *Milwaukee Police Ass'n*, 708 F.3d at 926–27. Thus, the organization must show it has a

redressable injury caused by the defendant. *Id.* For ease, we refer to this as individual standing.

Second, an organization can sue on behalf of its members through associational standing. *Prairie Rivers Network*, 2 F.4th at 1008. To do so, the organization must show: "(1) at least one of its members would 'have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members.'" *Id.* (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). The first two elements derive from the Constitution's "[C]ase or [C]ontroversy requirement" necessary to secure our jurisdiction whereas the third is prudential, "best seen as focusing on … matters of administrative convenience and efficiency." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555–57 (1996)). "Associational standing, then, is derivative of—and not independent from—individual standing." *Prairie Rivers Network*, 2 F.4th at 1008; *see also United Food*, 517 U.S. at 555 ("As *Hunt*'s most direct address to Article III standing, this first prong [of individual member standing] can only be seen as itself an Article III necessity for an association's representative suit.").

Under either approach, standing, which is an indispensable part of the plaintiff's case, "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Accordingly, we recognize two types of standing challenges: a facial challenge

and a factual challenge. *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022). A facial challenge asserts that a plaintiff fails to satisfy the requirements of standing on the pleadings, even if the complaint's well-pleaded allegations are taken as true. *Id.*; *see also Apex Digit.*, 572 F.3d at 444. A factual challenge, however, looks past the complaint. *Apex Digit.*, 572 F.3d at 444. It contends that while the complaint's allegations are formally sufficient, there is *in fact* no standing. *Id.*; *see also Flynn*, 39 F.4th at 952–53. When a factual challenge is raised, the plaintiff can no longer rest on the allegations in the complaint but must come forth with evidence to satisfy each of the elements necessary to establish standing. *Apex Digit.*, 572 F.3d at 444. Here, the defendants asserted a factual challenge at the pleading stage, so the Satanic Temple needed to show some specific evidence to satisfy the requirements of standing. By all accounts, the Satanic Temple has failed.

### 1. *Associational Standing*

The Satanic Temple claims it has associational standing. Thus, as stated above, the Satanic Temple must show that: (1) at least one of its members would have standing to sue; (2) the interests the Satanic Temple seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of its individual members. *Prairie Rivers Network*, 2 F.4th at 1008. To satisfy the first prong, the Satanic Temple must identify a member who has standing to present in her own right the injury caused by § 16-34-2-7(a) that we can remedy. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 499 (2009); *Disability Rts. Wisconsin*, 522 F.3d at 800 (noting that to support a finding of associational standing an organization must show one of its members can "present, in his or her own right, the claim (or type of claim)

pleaded by the association" (quoting *United Food*, 517 U.S. at 555)).

Relevant here, the key inquiry is whether a member of the Satanic Temple has suffered an injury in fact—one that is real, not abstract, and affects the plaintiff in an individual way separate from any generalized grievance she may have. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380–81 (2024). The Satanic Temple contends its members have suffered two types of harm. First, it argues there is a statistical probability that it has members who are involuntarily pregnant in Indiana. Second, it claims all of its members have suffered a stigmatic injury. We address each in turn.

### a. Probabilistic Standing

Instead of identifying an individual member who has suffered an injury, the Satanic Temple relies on statistical probability to show it has some unnamed members who might be injured. Specifically, it cites to the declaration of Dr. J.D., an obstetrics and gynecological osteopath proceeding pseudonymously, who claims it is reasonably likely that 94 of the Satanic Temple's 11,300 members located within the state of Indiana could become involuntarily pregnant during the course of a year and that it is reasonably likely that there is at least one involuntarily pregnant woman in Indiana at any given time.[9] Dr. J.D., though, does not identify any Indiana specific member who is involuntarily pregnant nor offer any opinion on whether any members who are involuntarily pregnant women would seek an abortion.

---

[9] Dkt. 44-2, Dr. J.D. Decl., at 3.

As an initial matter, the Satanic Temple's approach flouts the Supreme Court's instruction that "because of the difficulty of verifying the facts upon which such probabilistic standing depends," organizational plaintiffs seeking to establish associational standing must "identify" or "nam[e]" members who have suffered the requisite harm. *Summers*, 555 U.S. at 498–99. The circumstances here show why. While Dr. J.D. approximates there are 94 involuntarily pregnant members of the Satanic Temple, these members may or may not exist given the nature of probabilities. *See Satanic Temple v. Labrador*, 149 F.4th 1047, 1051 (9th Cir. 2025) (making a similar observation based on similar facts involving a risk of harm from Idaho's abortion laws). It is because of that very possibility that identifying "the affected members" is a requirement of associational standing that "has never been dispensed with in light of statistical probabilities" unless "*all* members of the organization are affected by the challenged activity." *Summers*, 555 U.S. at 498–99 (emphasis in original) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958)). Put another way, even taking Dr. J.D.'s declaration as true, we must speculate that an injured member of the Satanic Temple exists, which will not suffice. *Id.* at 499.

Relying on *NAACP*, 357 U.S. at 459–60, the Satanic Temple insists it has a First Amendment right not to name any affected member for the purposes of establishing standing. There the Supreme Court held that the state of Alabama could not compel the NAACP to disclose to the state's Attorney General the names and addresses of all its members and agents in Alabama because evidence revealed that the state was motivated by a desire to drive out the organization and its racial integration efforts. *Id.* at 453–54, 463–66. The Supreme Court invalidated the state's production order finding

it to be a "substantial restraint" on the NAACP's members' right to freedom of association and that any compelled disclosure would nullify that right at the moment of production. *Id.* at 459. But *NAACP* is inapposite. Namely, *NAACP* sought to provide anonymity for *all* members located within the state of Alabama, not just a handful—potentially 94 out of the asserted 11,300 members in the state of Indiana—that the Satanic Temple puts forth. *Id.* at 458–60; *see Summers*, 555 U.S. 498–99 ("This requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where all the members of the organization are affected by the challenged activity.").

To be sure, we have case law preceding *Summers* remarking that to satisfy the first prong of associational standing, "the member on whose behalf the suit is filed [can] remain unnamed by the organization." *Disability Rts. Wisconsin*, 522 F.3d at 802. We previously reserved for another day whether that statement survives *Summers*. *Prairie Rivers Network*, 2 F.4th at 1011. And we need not decide that issue today either because the Satanic Temple's associational standing argument on this score suffers from a separate fatal flaw.[10]

---

[10] We note, in context, the Court in making the statement in *Disability Rights Wisconsin* indicated that while the person could remain unnamed, the organization still needed to identify them. 522 F.3d at 803–04. The Satanic Temple could have done that by identifying its members and seeking permission from the district court to have them proceed pseudonymously. S.D. Ind. L.R. 10-1; *see, e.g., Speech First, Inc. v. Shrum*, 92 F.4th 947, 952–53 (10th Cir. 2024) (holding that an organization can identify members through pseudonym to satisfy *Summers*' identification requirement); *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024) ("[P]seudonymity poses no bar to a plaintiff[] [organization's] standing."). But because the Satanic Temple did not ask the district court to

Even under *NAACP* and *Disability Rights Wisconsin*, the Satanic Temple has not shown, through Dr. J.D.'s suspect statistical approach or otherwise, that it has any involuntarily pregnant members, or even an estimate of those members, who want to obtain an abortion. In other words, we are left with a simple estimate of women who may be involuntarily pregnant, and there is no evidence that any one of them would want to obtain an abortion. Simply put, missing here is evidence that any member of the Satanic Temple has "personally … suffered some actual or threatened injury." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). Moreover, the Satanic Temple has not provided any abortion-inducing drugs to one of its members in Indiana, but it "neither admit[s]," "den[ies]," nor "vouch[es] for," that fact.[11] In terms of standing on this front, then, there is simply no evidence allowing us to conclude that at least one of the Satanic Temple's members suffers from an injury that is "concrete and particularized" and "actual or imminent" necessary for her to bring suit. *Lujan*, 504 U.S. at 560.

### b. Stigmatic Injury

As a backstop argument, the Satanic Temple claims "Indiana['s] Abortion Ban" has caused all of its members to "suffer the stigma of being evil people because they do not believe a human being comes into existence at conception nor do they believe abortion is homicide." To be sure, stigmatic injuries

---

permit its alleged affected members to proceed without being identified by their name, we decline to opine here as to whether doing so would have been enough to satisfy *Summers*' holding.

[11] Dkt. 50-1, Pl.'s Resp. Defs.' 1st Set of Admissions, at 2.

stemming from discriminatory treatment may be sufficiently concrete to constitute an injury in fact. *See Allen v. Wright*, 468 U.S. 737, 754–55 (1984). But, other than merely saying so, the Satanic Temple provides no evidence that its members have actually suffered stigmatic injury. As we have noted, "generalized harm to a group of individual members will not" support "associational standing." *Prairie Rivers Network*, 2 F.4th at 1010; *see also All. for Hippocratic Med.*, 602 U.S. at 381 ("Nor may citizens sue merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action.").

***

In sum, the Satanic Temple has not pointed to any member, through its constitutionally questionable statistical probability method or otherwise, who is *in fact* injured, precluding subject matter jurisdiction on the grounds of associational standing. *Prairie Rivers Network*, 2 F.4th at 1008–10.

### 2. Individual Standing

Next, the Satanic Temple submits that it has standing to challenge § 16-34-2-7(a) because of the threat of prosecution if it decides to provide abortion-inducing drugs through telehealth medical appointments in Indiana.

If a plaintiff "must comply with a law or face sanctions," such as criminal prosecution, it can sue to enjoin the law before facing the consequences through a pre-enforcement challenge. *Hays v. City of Urbana*, 104 F.3d 102, 103–04 (7th Cir. 1997). To support a pre-enforcement challenge, a future harm amounts to injury in fact if the harm is "certainly impending" or poses a "substantial risk" of occurring but not if the harm is merely possible. *Susan B. Anthony List v. Driehaus*, 573 U.S.

149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). As relevant here, a plaintiff can show sufficient imminence of harm by pointing to a "credible threat of prosecution" that affects their constitutional rights, and by "mak[ing] clear its intention to *continue* its possibly unlawful conduct." *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021) (emphasis added) (first quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The mere intent to engage in possibly unlawful conduct, however, does not confer an injury in fact to those "without any description of concrete plans" or "any specification of *when* the some day [plans] will be." *Lujan*, 504 U.S. at 564 (emphasis in original). In other words, the party bringing the pre-enforcement challenge must have definite plans to engage in the prohibited conduct it challenges.

The Satanic Temple argues the threat of prosecution under § 16-34-2-7(a) "if" it prescribes abortifacients via telehealth appointments in Indiana is enough to show an injury to support its pre-enforcement challenge. There is no evidence, however, that the Satanic Temple *will* knowingly or intentionally prescribe abortifacients in violation of § 16-34-2-1 to face the prospect of prosecution. Indeed, it has not provided affidavits, declarations, or other evidence describing any specific, concrete plans of doing so. Without more, its speculative position, lacking even an outline of a plan, fails to satisfy the injury in fact requirement necessary for the Satanic Temple to establish standing. *See Lujan*, 504 U.S. at 564.

Moreover, recall that in order to conduct a legal abortion within the state of Indiana, among other requirements, the abortion must be performed by a physician in a hospital licensed under Indiana law or a surgical center that has a

majority ownership by a hospital licensed under Indiana law. IND. CODE § 16-34-2-1(a)(1)(B). But the Satanic Temple concedes that it does not employ physicians and has no ties to a "hospital" or "surgical center" within the state to perform abortions in adherence with the laws of Indiana. So even excluding the banned use of telehealth for abortions, under the current model of the Satanic Temple's telehealth clinic—where nurses prescribe abortifacients—it would be unable to provide its services in Indiana.

At oral argument the Satanic Temple, for the first time, presented evidence of a physician that it argued was licensed in Indiana and can prescribe abortion-inducing drugs via telehealth appointments in accordance with the regulations of the Food and Drug Administration if this Court would stop Indiana's requirement of in person visits for abortions under IND. CODE § 16-34-2-1(a)(1).[12] The Satanic Temple did not make this argument below. And "[w]e have repeatedly reminded litigants that we will not consider evidence and factual arguments that they did not present to the district court." *Flynn*, 39 F.4th at 953. The Satanic Temple's proffer now to support standing, "which is far too late," is no exception. *Id.*

Regardless, other Indiana statutes, which it does not challenge in this case, also prohibit the Satanic Temple's practices. *See, e.g.*, IND. CODE § 16-34-2-4.5(a) (requiring a physician performing abortions, including the use of abortifacients, to be admitted at a hospital located within the county where the abortion is to be performed or have an agreement with a physician in that county to provide services if complications arise). Critically, § 16-34-1-11 separately bars the use of

---

[12] Oral argument at 41:28–43:00, 48:25.

telehealth to be used in providing abortions, including writing or filling a prescription with its purpose to result in an abortion. Thus, even if § 16-34-2-7(a) did not criminalize the Satanic Temples's actions, enjoining the enforcement of it would not prevent the enforcement of other relevant Indiana statutes outlawing its practices, undermining a finding of causation or redressability.[13]

All of this taken together demonstrates that the Satanic Temple lacks standing to sue, and we do not have subject matter jurisdiction to hear its claims. *All. for Hippocratic Med.*, 602 U.S. at 396–97.[14]

### III.    CONCLUSION

For these reasons, we AFFIRM.

---

[13] Because the Satanic Temple's standing arguments fail at the injury in fact stage, we do not address the remaining elements further. *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016).

[14] The Satanic Temple makes a myriad of other arguments—one of which involved the consideration of sovereign immunity under the Eleventh Amendment related to the relief it sought under the Indiana Religious Freedom Restoration Act. But it agreed to dismiss those claims and any Eleventh Amendment consideration at oral argument. Oral argument at 50:25–50:50. We have carefully considered the Satanic Temple's remaining arguments, and because we find that they lack merit, they do not warrant discussion. *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Loc. 731*, 990 F.2d 957, 963 (7th Cir. 1993).