In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1534

PARENTS PROTECTING OUR CHILDREN, UA,

*Plaintiff-Appellant,*

*v.*

EAU CLAIRE AREA SCHOOL DISTRICT, WISCONSIN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:22-cv-00508-slc — **Stephen L. Crocker**, *Magistrate Judge.*

ARGUED SEPTEMBER 26, 2023 — DECIDED MARCH 7, 2024

Before WOOD, SCUDDER, and ST. EVE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Before us is an appeal brought by
Parents Protecting Our Children, an association of parents
that sued the Eau Claire Area School District in Wisconsin
federal court to enjoin the enforcement of the District's Ad-
ministrative Guidance for Gender Identity Support. The Ad-
ministrative Guidance, as its name implies, provides direction
and resources to schools encountering students with ques-
tions about their gender identity. Parents Protecting alleged

that the policy offends the U.S. Constitution's Due Process and Free Exercise Clauses by interfering with its members' exclusive right to make decisions with and on behalf of their children. The district court dismissed the complaint for lack of subject matter jurisdiction, explaining that Parents Protecting leveled a broad pre-enforcement facial attack on the Administrative Guidance without identifying any instance of the School District applying the policy in a way concerning or detrimental to parental rights.

We affirm. Parents Protecting is clear that their members harbor genuine concerns about possible applications of the School District's policy. Unless that policy operates to impose an injury or to create an imminent risk of injury, however—a worry that may never come to pass—the association's concerns do not establish standing to sue and thus do not create a Case or Controversy. The district court had no choice but to dismiss the challenge for lack of Article III subject matter jurisdiction.

# I

## A

In 2021 the Eau Claire Area School District promulgated the Administrative Guidance for Gender Identity Support. The Administrative Guidance aims to "foster inclusive and welcoming environments that are free from discrimination, harassment, and bullying regardless of sex, sexual orientation, gender identity or gender expression." To this end, the document provides "guidelines" for schools to follow "to address the needs of transgender, nonbinary, and/or gender non-conforming students." The Administrative Guidance explains that it is intended to be a "resource" because no amount

of general direction could "anticipate every possible situation that may occur" when it comes to matters of gender identity within a school environment.

The process envisioned by the Administrative Guidance recognizes that either students or parents may contact school officials with questions, concerns, or requests bearing on matters of student gender identity. By its terms, the Guidance acknowledges the delicacy and sensitivity of these matters, including the possibility that some students might "not [be] 'open' at home for reasons that may include safety concerns or lack of acceptance." For that reason, "[s]chool personnel should speak with the student first before discussing a student's gender non-conformity or transgender status with the student's parent/guardian."

In 2022 the School District prepared a template Gender Support Plan. The Gender Support Plan is a document for schools to complete in connection with implementing the Administrative Guidance for a particular student. It records the shared understanding between the student and the School District of a student's gender identity and parental involvement in the process. The Support Plan explains that "[s]chool staff, family, and the student should work together to complete th[e] document."

Like the Administrative Guidance, the Support Plan recognizes that circumstances may arise where "parents are not involved in creating this plan," in which case the Plan directs school officials that "it shall be made clear to the student that this plan is a student record and will be released to parents when they request it." This disclosure commitment gives effect to the School District's acknowledgment that a support

plan "is not a privileged document between the student and the school district."

B

Parents Protecting Our Children is an unincorporated association of parents whose children attend schools within the Eau Claire Area School District. In September 2022 the association brought this lawsuit seeking declaratory and injunctive relief on claims alleging that both the Administrative Guidance and Gender Support Plan violate its members' rights as parents under the Due Process Clause of the Fourteenth Amendment and the Free Exercise Clause of the First Amendment. The complaint also alleged claims under Wisconsin law.

To its credit, Parents Protecting is candid on two fronts important to our resolution of its appeal. The organization acknowledges that it brought this lawsuit not in response to an experience any member parent had with the School District's implementation of the Administrative Guidance, but instead as a facial pre-enforcement challenge to invalidate the entirety of the new policy. Parents Protecting is equally clear that what motivates its lawsuit are sincerely held, religiously-rooted concerns and uncertainties about how the School District may implement the Guidance or craft a Gender Support Plan.

Parents Protecting worries that the Administrative Guidance encourages the School District to leave parents in the dark if their children wish to explore their gender identity or begin to socially transition to a different gender at school. The association also fears that the School District will implement the Guidance and related support plans in ways that

effectively displace parental rights by making major life decisions for their children. In these ways, the organization sees the District's Administrative Guidance as sowing so much secrecy and mistrust between parents and their children as to offend principles of substantive due process and religious free exercise.

The district court concluded that the association failed to allege any injury or risk of injury sufficient to establish standing under Article III's Case or Controversy requirement. Neither the Administrative Guidance nor the template Support Plan, the district court determined, mandated the exclusion of parents or guardians from discussions or decisions regarding a student's gender expression at school. From there the district court emphasized that the complaint lacked any allegation that any member's child had questioned their gender identity or otherwise sought guidance or support under the School District's policy, leaving the association unable to plead any withholding of information from parents. In its final analysis, the district court viewed the alleged harm as dependent on a "chain of possibilities" too speculative to establish Article III standing.

Parents Protecting now appeals.

## II

### A

Federal courts are courts of limited jurisdiction. No matter how important a legal question or how sincere a worry, we must ensure the presence of a Case or Controversy. This requirement anchors itself in principles of separation of powers and federalism. In limiting the authority of federal courts, the Constitution empowers other branches and actors (and by

extension, the people). In some instances, that means Congress and the President (at the national level), and in others, states and municipalities (at the local level).

Standing doctrine implements Article III's Case or Controversy requirement. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). It does so by requiring the party invoking the jurisdiction of a federal court (most often the plaintiff) to allege that it has suffered "an invasion of a legally protected interest which is … concrete and particularized … and … actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted). The injury must be traceable to the defendant's actions and capable of being redressed through a favorable judicial decision. See *id.* at 560–61.

The law recognizes that an anticipated future injury may be sufficiently imminent to establish standing. See *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). But the alleged future injury must also be concrete: conjecture about speculative or possible harm is inadequate. See *id.* at 410.

All agree that Parents Protecting may bring a lawsuit like this one in an associational capacity and thus on behalf of its members upon satisfying three requirements. Associational standing, the Supreme Court has explained, requires factual allegations showing that (1) at least one of the association's members would otherwise have standing to sue in their own right; (2) the interests sought to be protected by the lawsuit are germane to the association's purpose; and (3) neither the claims asserted nor the relief sought requires the participation of individual members in the lawsuit. See *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

B

Parents Protecting never clears the threshold. The association invites us to look beyond the language of the Administrative Guidance to risks that the association envisions and worries may accompany its implementation. To provide but a few examples, the association casts its concerns along these lines:

- "[I]f a child wants to keep their gender transition at school secret from their parents, the District will happily oblige, effectively treating school like Las Vegas— what happens at school stays at school."

- "The existence of the Policy alone directly harms those relationships by communicating to minor students that secrets from their parents— including an entire double life at school—are not only acceptable, but will be facilitated by the District upon request."

- "[T]he District's Policy transfers [member's] decision-making authority over whether a gender-identity transition is in their child's best interests from them to school staff and/or minor students themselves, and the loss of their parental authority over this decision is a present injury, because it prevents them from saying no to a transition."

No doubt Parents Protecting's allegations punch with conviction and concern. But nowhere does the complaint allege that even one of the association's members—any particular parent—has experienced an actual or imminent injury attributable to the Administrative Guidance or a Support Plan. Nor, for that matter, do we see an indication that any of Parents Protecting's members asked the School District about

how it plans to implement the Guidance. All we have before us is a policy on paper without concrete facts about its implementation.

The district court was right to see Parents Protecting's pleading shortcoming as analogous to the one that guided the Supreme Court's reasoning in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). The Court in *Clapper* considered a challenge to the Foreign Intelligence Surveillance Act brought by lawyers concerned that the federal government's electronic-surveillance activities would intercept privileged and confidential communications with their foreign clients. See *id.* at 401. But the lawyers' complaint contained no allegations that any such interceptions had occurred or were likely to occur in the near future. See *id.* at 411. And it was that precise gap that led the Court to hold that the plaintiffs lacked standing, as they failed to allege facts showing that their "threatened injury" was "certainly impending." *Id.* at 410. To the contrary, the alleged harm "relie[d] on a highly attenuated chain of possibilities." *Id.*

The same deficiency requires us to affirm the dismissal of Parents Protecting's complaint. Applying *Clapper*'s reasoning here reveals that Parents Protecting's expressions of worry and concern do not suffice to show that any parent has experienced actual injury or faces any imminent harm attributable to the Administrative Guidance or a Gender Support Plan. Maybe that day will come for a member parent. Maybe not. All we can say with certainty today is that Parents Protecting's allegations fall short of establishing a Case or Controversy.

## III

Everyone reading this opinion will recognize the sensitivity, delicacy, and difficulty of the subject matter addressed by the Administrative Guidance. Many will take the next step of looking forward and asking hard "what-if" questions. Today's decision affords the Eau Claire School District the opportunity to devise responses in each individual circumstance as it arises—informed by balanced, inclusive, and respectful dialogue. Will those answers always come easy and satisfy everyone? Hardly. Life often deals challenging, frustrating, and messy hands. Allowing solutions to be sought—or perhaps at times impasses to be reached—student by student and circumstance by circumstance most respects the role and position of the Eau Claire School District and the interests of all involved in and affected by implementation of the Administrative Guidance.

If resort to the federal courthouse proves necessary in a particular instance, so be it. But this lawsuit came as the ink was still drying on Eau Claire's Administrative Guidance. Parents Protecting seeks to pull a federal court into a range of complex and often emotional challenges on matters of gender identity, where the right policy recipe is not yet clear and the best answers are sure to come in time—through the experiences of schools, students, and families. On these levels, the federal judiciary has no input to provide—no policy perspective to offer and no implementation tips to suggest. Our role is limited to awaiting concrete disputes between adverse parties, and to resolving those disputes under established rules of procedure and familiar methods of legal reasoning. But sweeping pre-enforcement facial invalidation of law is highly disfavored. See *United States v. Salerno*, 481 U.S. 739, 745

(1987). And that is especially so where, as here, the relief sought implicates a local policy and weighty principles of federalism. See *Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983).

This limited role—mandated by Article III's Case or Controversy requirement—imposes an obligation of restraint (indeed, judicial humility) in a circumstance like this. In the absence of an actual or imminent injury sustained by Parents Protecting or one of its members, we have no choice but to stay on the sidelines.

With these final observations, we AFFIRM.