Cite as: 604 U. S. \_\_\_\_ (2024)          1

# SUPREME COURT OF THE UNITED STATES

PARENTS PROTECTING OUR CHILDREN, UA *v.* EAU CLAIRE AREA SCHOOL DISTRICT, WISCONSIN, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 23–1280.   Decided December 9, 2024

The petition for a writ of certiorari is denied.

JUSTICE KAVANAUGH would grant the petition for a writ of certiorari.

JUSTICE ALITO, with whom JUSTICE THOMAS joins, dissenting from the denial of certiorari.

This case presents a question of great and growing national importance: whether a public school district violates parents' "fundamental constitutional right to make decisions concerning the rearing of" their children, *Troxel* v. *Granville*, 530 U. S. 57, 70 (2000) (plurality opinion), when, without parental knowledge or consent, it encourages a student to transition to a new gender or assists in that process. We are told that more than 1,000 districts have adopted such policies. See Pet. for Cert. i.

The policy in this case is illustrative. In 2021, the Eau Claire Area School District issued "Administrative Guidance for Gender Identity Support." App. to Pet. for Cert. 64. The guidance instructs school personnel to create "Student Gender Support Plan[s]" for students "[w]hen appropriate or necessary." *Id.*, at 65. The plans can address a student's restroom use, participation in athletics, and "social, medical, surgical, and/or legal processes." *Id.*, at 65–66. Furthermore, because "[s]ome transgender . . . students are not 'open' at home," the policy contemplates circumstances under which "parents are not involved in creating" their child's Gender Support Plan. *Id.*, at 66–72. As school personnel were told in an equity training session: "parents

are not entitled to know their kids' identities.   That
knowledge must be earned." *Id.*, at 78, 80.

Petitioner, an association of parents whose children at-
tend schools in the district, sued to enjoin the policy, citing
their fundamental right to "make decisions" concerning the
upbringing of their children. *Id.*, at 54. The lower courts
never reached the merits, however, because they concluded
that petitioner lacked standing. Relying principally on our
decision in *Clapper* v. *Amnesty Int'l USA*, 568 U. S. 398
(2013), the Seventh Circuit suggested that a parent could
not challenge the district's policy unless the parent could
show that his or her child is transitioning or considering a
transition. 95 F. 4th 501, 505 (2024). But the challenged
policy and associated equity training specifically encourage
school personnel to keep parents in the dark about the
"identities" of their children, especially if the school believes
that the parents would not support what the school thinks
is appropriate. Thus, the parents' fear that the school dis-
trict might make decisions for their children without their
knowledge and consent is not "speculative." *Ibid.* (citing
*Clapper*, 568 U. S., at 410). They are merely taking the
school district at its word.

I would grant the petition so that we can address this
questionable understanding of *Clapper* and related stand-
ing decisions. I am concerned that some federal courts are
succumbing to the temptation to use the doctrine of Article
III standing as a way of avoiding some particularly conten-
tious constitutional questions. While it is important that
federal courts heed the limits of their constitutional author-
ity, it is equally important that they carry out their "virtu-
ally unflagging obligation . . . to exercise the jurisdiction
given them." *Colorado River Water Conservation Dist.* v.
*United States*, 424 U. S. 800, 817 (1976).